EDWIN J. MILLS *vs.* EUGENE S. SULLIVAN.

Bristol.    October 25, 1915. — February 10, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, J.J.

*Sales of Merchandise in Bulk.   Conversion.   Damages,* In tort.

If a retail grocer mortgages his stock in trade and fixtures, worth $100, to a creditor to whom he owes $200 and who does not record the mortgage, and then on the same day releases to the same creditor all his rights as mortgagor and owner and the creditor immediately takes possession of the goods "under a claim of ownership" and appoints the former owner his agent for purposes of sale, and if the notice to creditors required by the provisions of St. 1903, c. 415, § 1, is not given, the title to the stock in trade so transferred to the creditor is voidable by other creditors, because his taking possession was not as a mortgagee under R. L. c. 198, § 1, and the effect of the transfer of the merchandise by the mortgage and the release was to defeat the purpose of St. 1903, c. 415, although the mortgage and release were not executed in bad faith with a purpose to circumvent the provisions of the statute.

Consequently a deputy sheriff, who attached the merchandise, after the transfer above described, by virtue of a writ in an action at law by another creditor against the grocer and from whose possession it was taken by a constable in

an action of replevin brought by the first creditor in which no bond was given and which never was entered in court, is entitled in an action for the conversion of the merchandise to recover its full value from the constable.

TORT for the conversion of the stock in trade and fixtures of a retail grocery. Writ in the Second District Court of Bristol dated August 10, 1910.

On appeal to the Superior Court the case was heard by *Jenney, J.*, without a jury. The parties agreed to a "statement of facts" covering the material facts, it being stipulated in the agreement that "All proper inferences of fact may be drawn, except as to the purpose with which the mortgage and release" hereinafter described "were executed." The facts agreed were as follows in substance:

The National Wholesale Grocery Company, Incorporated, did business with one Frank Grossman, a retail grocer. Grossman was indebted to the corporation in the sum of $200. On May 10, 1910, Grossman mortgaged the property in question to the corporation to secure that indebtedness. The value of the fixtures was $25. The value of the stock in trade was $75. Subsequently, on the same day, Grossman, finding that it was not profitable for him to continue the business, released his equity of redemption to the mortgagee by indorsing on the mortgage instrument the following statement, signed by himself with a seal affixed: "I hereby release my equity of redemption to mortgagee and transfer all rights in said property to mortgagee." The mortgage never was recorded. The mortgagee immediately took possession of the property, under a claim of ownership, leaving Grossman in charge as its agent under the following instrument, which bore his signature and seal and was dated May 10, 1910. "I, Frank Grossman, hereby take the following goods [comprising the stock in trade] from the National Wholesale Grocery Company, and agree to hold the same for its benefit, and in case I sell any of said goods, I agree to turn over the money for the same at the end of each day to the said corporation without any deduction of any kind." No notice, such as is described in St. 1903, c. 415, § 1, was given to any creditor. Thereafter on May 13, 1910, Snell and Simpson, creditors of Frank Grossman, attached the personal property above described as the property of Grossman on a writ in an action at law against Grossman, and the plain-

tiff, a deputy sheriff, took possession of the property under that writ. A demand was made on the plaintiff for the property by the grocery corporation. The defendant, a constable, under a replevin writ in which the grocery corporation was the plaintiff and Mills was the defendant, took possession of the property and turned it over to the corporation. No replevin bond ever was executed and the replevin suit never was entered in court.

The judge found nominal damages for the plaintiff; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*F. A. Pease,* for the plaintiff.

*D. R. Radovsky,* for the defendant.

PIERCE, J. The plaintiff by virtue of his writ had actual possession of and a special property in the goods when they were taken from him by the defendant. *Ladd* v. *North,* 2 Mass. 514, 518. Save as justified by law the seizure by the defendant was a trespass and he became a trespasser *ab initio* upon his failure to enter in court the replevin writ. *Hanly* v. *Davis,* 166 Mass. 1.

Presumptively the plaintiff became entitled to recover against the defendant in an action of conversion the full value of the goods. *Hanly* v. *Davis, supra.* The goods had been mortgaged by the defendant in the writ by virtue of which the plaintiff, in his capacity of deputy sheriff, had attached them, to a creditor to secure the payment of a debt admitted to be larger in amount than the value of the goods. On the day of the execution and delivery of the mortgage the mortgagor released to the mortgagee his equity of redemption. The mortgagee took possession of the property and placed the recent owner and mortgagor in the custody and charge of the goods to hold as his agent. While they were in the custody and charge of the former owner the plaintiff, by virtue of his office, attached them under a writ wherein an admitted creditor was named as plaintiff and the former owner appeared as defendant. The defendant in the case at bar delivered the goods taken on a replevin writ to the mortgagee immediately after taking them from the possession of the plaintiff.

The plaintiff contends that the transaction so far as it relates to the stock in trade was a fraudulent sale as against creditors of whom the plaintiff named in the original writ was admitted to be one under the sales in bulk act, St. 1903, c. 415.

By the express words of the agreed statement of facts we are not permitted to draw inferences of fact "as to the purpose with which the mortgage and release aforesaid were executed."

It follows that we cannot infer that the mortgage and release were executed in bad faith with a purpose to circumvent the provisions of the statute of 1903, c. 415, but the effect of the mortgage and release was to transfer the absolute legal title to all the property and if allowed to be good to defeat the statute.

We cannot give countenance to any device calculated to produce such result.

It follows that a title thus acquired is voidable by creditors.

The mortgage is not within the terms of the act. *Wasserman* v. *McDonnell*, 190 Mass. 326, and, as the mortgage debt is admitted to be greater than the value of the property, the plaintiff is permitted to recover no more than nominal damages, *Squire* v. *Hollenbeck*, 9 Pick. 551, if the mortgagee before the attachment has recorded the mortgage or has taken and retained possession of the mortgaged property in compliance with the requirements of R. L. c. 198, § 1.

It is not contended that the mortgage was recorded or that any possession was taken and retained by the mortgagee as such unless the taking of possession "under a claim of ownership" coincidentally following upon the delivery of the release be deemed to be also a taking of possession as mortgagee. We do not think it can be so considered and this conclusion renders it unnecessary to determine whether leaving the mortgagor in charge was a compliance with the requirements of R. L. c. 198, § 1, as to possession and retention of possession.

The conveyance was not valid against the attaching creditor as a mortgage or as an absolute transfer of title.

The entry should be

*Exceptions sustained.*