STATE, EX REL., *v.* SUPERIOR COURT OF MARION COUNTY ET AL.

STATE, EX REL., *v.* SUPERIOR COURT OF MARION COUNTY ET AL.

[Nos. 24,732, 24,733. Filed September 2, 1924.]

1. CONSTITUTIONAL LAW.—*Receivers.—Appointment Without Notice to Persons in Possession of Property.*—The 14th Amendment to the federal Constitution (§39 Burns 1914) forbids that any person shall be deprived of property without due process of law, which necessarily means that one in full possession of property under claim of ownership cannot lawfully be deprived of possession without notice, a hearing and an adjudication of his rights, and a court order appointing a receiver without notice and directing such receiver to take possession of such property, without notice to, or opportunity to be heard by, those in possession, is wholly unwarranted. p. 180.

2. RECEIVERS.—*For Individuals.—Insolvency Does Not Authorize.—Statute.*—Courts do not have jurisdiction to appoint a receiver for the property of an individual and seize possession of it on allegations that he is indebted to the applicant for borrowed money and that he is conducting himself so as to be in

danger of insolvency, without a showing that the applicant has a lien on such property; §1279, cl. 5, Burns 1914, relative to the appointment of receivers for corporations, not being applicable. p. 181.

3. PROHIBITION, WRIT OF.—*When May Issue.*—A writ of prohibition may issue from the Supreme Court to prohibit further proceedings by a court which, having no jurisdiction to appoint a receiver for the property of an individual, has appointed a receiver therefor, who, under the direction of the court, has taken possession of the property of other persons in possession thereof under claim of ownership, without notice or opportunity to be heard as to their rights, and who is threatening to continue in the possession and use of said property and thereby damaging the relator. p. 181.

Original proceedings in the Supreme Court by the State of Indiana on relation of the Lebanon Discount Corporation and on relation of John Brill to obtain a writ of prohibition against the Superior Court of Marion county, the judge thereof, and others. *Writ issued.*

*Roscoe Hollingsworth* and *Means & Buenting,* for petitioner.

*Bamberger & Feibleman,* for respondents.

PER CURIAM.—In these actions each relator alleges substantially the same facts and seeks the same relief. Those facts are that on July 1, 1924, one Ella H. Fendley filed her verified complaint in the Superior Court of Marion county, Indiana, alleging that she had loaned $400 to James A. Fendley, which was now past due, and the payment of which had been demanded and refused; that said defendant owned a certain bus line, on which he operated some motor busses that had not been paid for in full, but were owned by him, either upon conditional sale or subject to mortgage; that defendant was "neglecting his business, and the proceeds of such business are being collected by others and are being dissipated," and, by reason thereof, he was either insolvent or in imminent danger of insolvency; and that

defendant was concealing himself so that no summons or notice could be served on him. Said complaint concluded with a prayer for the appointment of a receiver "for the assets of said defendant."

That thereupon, the respondent Moll, as judge of said court, entered upon the records of the court an order that the respondent Dodson be and thereby was "appointed receiver to take charge of the assets of said defendant * * * that said receiver be and he hereby is authorized and directed to take charge of the ten (10) motor busses owned by defendant and known as the Greenwood and Southport Bus Line" (though the number of busses had not been stated in the petition) and operate said line "with the motor busses belonging to this defendant," and also "to take charge of the proceeds of said bus line or cash on hand belonging to this defendant which is in the hands of one Mr. Sample * * * who is a representative of the [relator] Lebanon Discount Corporation * * * who is maintaining a temporary office at the Indianapolis Bus Terminal at Indianapolis"; and further reciting that the receiver then filed his bond, that it was approved, and that he was sworn.

That in the forenoon of the next day, said Dodson, as such receiver, went to the Indianapolis Bus Terminal and demanded of a young lady there who was in the employ of said relator, Lebanon Discount Corporation, that she turn over and deliver to him the possession of said ten motor busses, and all the money in her hands, being the proceeds of their operation as the Greenwood and Southport Bus Line, although it is alleged that at said time her employer, the relator Lebanon Discount Corporation, was the absolute owner of nine (9) of said busses and all of the money, and was in the possession of the same, and had been since June 28, 1924 (a period of four days), and that one

Sample was the absolute owner of the tenth bus, and was in the possession thereof, and had been since June 24, 1924; that said demand was refused, and the next day (July 3) said relator corporation sold and transferred the absolute title and ownership of eight (8) of its said motor busses to relator Brill, and delivered to him the possession thereof, and, on the same day, said Sample also sold the absolute title to his said auto bus to Brill and delivered to him the possession thereof; that in the afternoon of July 2, said Dodson renewed his demand for possession by presenting it to the manager of the relator corporation, who refused it and told him that nine of said busses then were and since June 28, had been the property and in the possession of said corporation, and the tenth was and since said date had been the property and in the possession of said Sample; that said receiver thereupon filed with said judge of the superior court a verified information stating that the said order had been issued, that after filing his bond and qualifying as receiver he had demanded of said young lady and said manager in the employ of the relator corporation the busses and money described in the order and had shown them a copy of the order signed by the judge, but they had refused to surrender the property, as above stated; that the court, by said judge, thereupon issued an order reciting that such information had been filed, and commanding the relator corporation and its said employees to appear on July 5, 1924, and show cause why they should not be attached and punished for contempt; that on said date, they appeared and filed a motion to discharge the rule against them for the alleged reasons: (1) that the facts stated in the information did not constitute contempt; and (2) that the court had no jurisdiction in the matter, but the motion was overruled, and the parties then filed

verified answers; that the answer of the relator corporation and its manager averred that the money and property in question demanded by the receiver were the property of the relator corporation, in the possession of its employee holding the same on its behalf, except one bus which was owned by and was in the possession of Sample; that James A. Fendley had no right, title, interest nor equity in or to the same at the time when this suit was commenced, and when the receiver was appointed, and when the demands were made and refused, and thereafter; that none of the defendants in the contempt proceeding at any time had in their possession any money or property of said Fendley, and none of them were parties to the action in which a receiver was appointed, or had any notice of the same, and by reason of said facts, no contempt was intended or committed in refusing to surrender possession of said property.

The young lady filed a verified answer stating that she was employed, as stated, on June 28, 1924, by the relator corporation and by Sample to take charge of and operate said busses and to collect and hold for them the money derived from such corporation, and had only obeyed orders given to her by her said employers in refusing to surrender possession of the money and property as stated, and was not intending a contempt of court or to obstruct the process of the court by what she did; that she never at any time had any money or property of the defendant, James A. Fendley, in her custody and control, and did not withhold from the receiver any property that belonged to him. That except said information and answers, no other papers were filed and no evidence was heard, but the court (said judge) immediately announced that he would continue the matter and hear nothing further in it until September 15, 1924, and entered minutes of such continu-

ance, and, in open court, in the presence of said parties, said judge then directed the receiver, with the sheriff or his deputy, to take physical and actual possession of said ten motor busses and said money, the proceeds of their operation, and to use whatever means might be necessary for that purpose; and stated that, if resistance was offered, that fact should be reported and the person offering resistance should be brought before said court and would be summarily imprisoned and punished; that the receiver then renewed his demand, and under the influence of fear inspired by said statements of the judge and the threat to use force and violence, the said busses and money were by said employes of the relators turned over to said Dodson as such receiver, on July 5, 1924, who had ever since continued the operation of the same as a bus line, thereby continually lessening their value, and unless restrained and prohibited, said court and judge and receiver would continue so to do.

The respondents filed in this court an answer to the effect that the money and property in question really belonged and still belongs to said James A. Fendley, and they filed affidavits intended to show that relators and their said alleged employees had possession of the property under some kind of an arrangement with Fendley, by which the bus line was to be operated and the proceeds used in paying his debts for a time, and then the property turned back to him. But there was no denial of the facts that relators were and for some days had been in full possession of all the property in question when the suit for a receiver was commenced, and that they had not been made parties nor served with notice nor given a hearing as to their right to continue in possession.

Two questions arise in this case: *First,* whether under any circumstances, by means of a receiver or

otherwise, a court can seize upon property of which persons not parties to any action pending before it are and since before the commencement of suit in relation thereto in such court have been in possession under claim of ownership, and can deprive such persons and their grantees of its possession summarily, without summons, pleading, trial or hearing, by an order (verbal or otherwise) to a receiver or a sheriff, specifying such property as something to be seized, and by a threat to imprison for contempt such claimants if they do not surrender it. And, *Second,* whether, by the filing of the complaint above set out, the superior court or judge thereof acquired jurisdiction to appoint a receiver for the property of an alleged individual owner, even supposing that it might, by its receiver, summarily take property away from persons in possession under claim of ownership. Both of these questions must be answered in the negative.

As to the first question the Constitution of the United States forbids that any person shall be deprived of life, liberty or property without due process of law, or denied the equal protection of the law. Amendment 14, U. S. Constitution, §39 Burns 1914. And being in possession, whether the relators were claiming as vendors under a conditional sale or as mortgagees after condition broken, or claiming to own the absolute title, yet being in full possession under claim of such ownership as would give a right to continue in possession, that possession could not be taken from them without notice, a hearing and an adjudication. Merely to make a demand upon them, cite them for contempt, and continue the hearing upon that citation to a time more than ten weeks in the future, did not give the court any jurisdiction to order the property taken from them. And its original order specifying this property to be taken possession of by the

State, ex rel., v. Superior Court—195 Ind. 174.

receiver, made in an action to which they were not parties, upon the appointment of a receiver without notice, was wholly without jurisdiction so far as adjudicating any of their rights was concerned.

As to the second question, it is enough to say that the courts of this state do not have jurisdiction to appoint a receiver for the property of an individual owner, and seize possession of it, upon mere allegations that he is indebted for borrowed money, and that he is so conducting himself as to be in danger of insolvency, without any showing that the plaintiff has a lien of any kind upon such property, created by contract, attachment, levy or otherwise. No such right existed at common law, and the statutory provision which makes threatened insolvency of a corporation cause for the appointment of a receiver (§1279, subd. 5, Burns 1914, §1222 R. S. 1881) does not apply to individuals alleged to be indebted beyond their ability to pay.

The trial court having no jurisdiction to appoint a receiver for the property of the individual defendant in the original action upon the facts of that case, and no jurisdiction to wrest from persons who, before that suit was commenced, were in full possession of the motor busses and money in question, their said possession without "due process of law," and relators having no remedy in the ordinary course of law that is plain, speedy and adequate,. a proper case is presented for the arrest of proceedings by a writ of prohibition. §1224 Burns' Supp. 1921, Acts 1915 p. 207; *Havemeyer* v. *Superior Court* (1890), 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 644, 18 Am. St. 192; *People, ex rel.,* v. *District Court* (1922), 72 Colo. 525, 218 Pac. 742.

It is therefore ordered that the superior court of Marion county, State of Indiana, and judge thereof be

and are prohibited and absolutely restrained from further proceedings in the matter of seizing and holding possession of any property of which petitioners were in possession under claim of ownership on the first and second days of July, 1924, and each and all of the respondents are prohibited and forbidden to induce or compel relators, by force or threats or otherwise, against their will to give up possession of the same, unless and until it shall first have been adjudicated by a competent tribunal, in an action to which they are duly made parties, that they do not have the right to such possession; and respondents are prohibited and forbidden to withhold from the possession of relators any such property which they may heretofore have taken from such possession in the manner or by the means hereby prohibited.