## SLOW ET AL. *v.* OHIO VALLEY ROOFING COMPANY.

[No. 24,677. Filed June 29, 1926.]

1. RECEIVERS.—*Transfer of property of an insolvent individual fraudulently, or a lien thereon must be shown to confer jurisdiction on court to appoint receiver therefor.*—Courts do not have jurisdiction to appoint a receiver for the property of an individual and seize possession of it on allegations and proof that he is insolvent and has transferred all his business property to a trustee for the benefit of certain of his creditors, not including the plaintiff, without any showing that the plaintiff has a lien on the property transferred to the trustee or that there was fraud in making such transfer. p. 195.

2. FRAUDULENT CONVEYANCES.—*Transfer by insolvent individual of all his property to secure pre-existing debts of certain creditors is not transfer within "Bulk Sales Law" and not ground for appointment of receiver.*—The transfer by a debtor of all his property to a trustee for the benefit of a portion of his creditors as security for pre-existing debts, providing therein for redemption from the trust by the payment of the indebtedness secured thereby and for sale of the property and the application of the proceeds to the payment of the debts so secured, is not a transfer prohibited by §8052 Burns 1926, §7471a Burns 1914 (the Bulk Sales Law) without notice to creditors, and hence is no ground for the appointment of a receiver under §8054 Burns 1926, §7471c Burns 1914. p. 196.

3. FRAUDULENT CONVEYANCES.—*Chattel mortgage of stock of goods is not transfer prohibited by the "Bulk Sales Law" without notice to creditors.*—A chattel mortgage on a stock of goods for a *bona fide* indebtedness does not constitute a sale, transfer or assignment within the meaning of the "Bulk Sales Law" which is prohibited unless proper notice is given to all creditors as prescribed by the statute (§8052 Burns 1926, §7471a Burns 1914). p. 196.

4. FRAUDULENT CONVEYANCES.—A mortgage for the benefit of a portion of the mortgagor's creditors is not invalid where it was given in good faith as security for *bona fide* debts actually owed by him.  p. 198.

From Vanderburgh Probate Court; *Elmer Q. Lockyear,* Judge.

Application for the appointment of a receiver by the Ohio Valley Roofing Company against Harry Slow and others.   From a judgment appointing a receiver, the defendants appeal.   *Reversed.*

*James T. Walker, Henry B. Walker* and *Alvin F. Sutheimer,* for appellants.
*Ollie C. Reeves* and *William L. Mitchell,* for appellee.

EWBANK, J.—This is an appeal from an order appointing a receiver for property of Harry Slow, which he owned as an individual and was using in the operation of a business under the name of "the Harry Slow Lumber Company."   The complaint alleged that appellant Slow was indebted to appellee for merchandise sold to him in the sum of $817.33, which amount was due and unpaid; that Slow was insolvent, and had created a large amount of indebtedness within the past two or three months and was engaged in disposing of his assets; that two weeks before the complaint was filed, he had executed a conveyance of all his property used in the business of the Harry Slow Lumber Company to a trustee for certain of his unsecured creditors, not including appellee, and that the trustee was threatening to sell such assets on the morning of the day when the complaint was filed; that some of appellant's creditors had claims secured by mechanics' liens, and the trustee threatened to pay the claims thus secured out of the proceeds from a sale of such assets, to the detriment of the unsecured creditors.   And that the instrument of conveyance purporting to be a mortgage to a trus-

tee for the benefit of certain creditors therein named was intended as a voluntary assignment for the benefit of all general creditors, though it did not name all of them as beneficiaries thereunder. The conclusion was stated that, unless a receiver be appointed at once, the plaintiff and other creditors who had no liens or security would suffer irreparable damage. This complaint was duly verified. Appellant filed an answer of denial and there was a trial by the court.

The evidence consisted of a statement of agreed facts, and without conflict showed that appellant for many years had been engaged in the contracting business at Evansville; that, for a few months, he had been a partner in the Meredith and Slow Lumber Company, which operated a lumber yard and sold builders' supplies, but more than three months before this action was commenced, had bought out the interest of his partner, and thereafter had continued the business of general contractor and the operation of the lumber yard as sole owner under the name of the Harry Slow Lumber Company, until the mortgage above referred to was executed; that being pressed for payment by some of his creditors, he had executed the written instrument referred to, purporting to convey to a trustee, for the sum of $1, that portion of his property used in the conduct of the business of the lumber company and in the general contracting business, "consisting of all mill machinery, lumber and office fixtures, outstanding accounts receivable, contracts, open accounts, choses in action, mechanics' liens or notes or bills," (many items of such property being enumerated), "as trustee for certain of general unsecured creditors of the mortgagor, a list of which creditors is hereto attached with their addresses and the amount desired to be secured by this mortgage, all of which are made a part of this instrument." That it provided that any one of the creditors

who should attempt to set the mortgage aside or refuse to accept benefits under it should not share in the benefits thereof, and that the mortgagor should keep possession of the property as agent of the trustee and sell the merchandise in the ordinary course of business, collect outstanding accounts, and account daily to the trustee for the entire proceeds. It also authorized the trustee to pay pro rata dividends to the creditors for whose benefit the mortgage was made until they should be paid in full, and provided that until the trustee should demand possession of such property, the mortgagor should remain in possession thereof as agent of the trustee, for his use and benefit, but that the trustee might be required to sell and dispose of any such goods and chattels on demand of a majority of the creditors in number and amount of their claims. Also that, upon payment by the mortgagor to the trustee of a sufficient sum fully to satisfy and discharge the claims of the creditors thereby secured, including costs and expenses in carrying out the trust, the conveyance should become void. A list of the creditors whose debts were to be paid and the amount of the debt secured on behalf of each, was attached to the instrument. It was shown that at the time he executed this instrument, appellant believed his assets were equal to or in excess of his liabilities, but did not know the amount of either. That said instrument was duly recorded in the county in which he resided on the next day after it was executed, being thirteen days before this suit was brought. That at the time he executed this instrument, appellant purposely omitted from the benefits thereof two creditors having claims of over $2,000, and, by mistake, omitted from such benefits three others who were general merchandise creditors. That he intended by this instrument to transfer for the purposes therein set out all

of his assets except a piece of real estate worth $200 in excess of incumbrances, and his individual carpenter tools, his clothing, household furniture and some personal articles. That after the execution of the instrument, appellant remained in possession and charge of the lumber yard and mill, which continued in operation as before, sales and purchases being made and business transacted as usual, with the approval of the trustee, who visited the lumber yard daily and assisted in the management of the business. That a week later, some of the largest creditors insisted on the property being taken from the control of appellant and sold under the terms of said instrument. That the total assets of appellant in excess of the cost of completing his unfinished contracts would amount to about $10,000, being something in excess of the value of the mill, lumber yard and open accounts, and that his liabilities were about $23,000. That the trustee had been attempting to sell such assets for cash and was intending to sell them at private sale on the day the complaint asking for a waiver was filed. And that appellant was a married man (but there was no proof that he resided with his wife and kept house in the State of Indiana).

After hearing this evidence, the court confirmed the appointment of a receiver who had been already appointed without notice, and ordered that the receivership be made permanent, and that, "all the stock of merchandise and fixtures, goods, wares and merchandise shall be taken possession of by the receiver herein * * * with such other property of the defendant, Harry Slow, as was not conveyed to the trustee, and that the said receiver shall hold and preserve the assets and deal therewith generally as may from time to time be ordered and directed by the court," but excepted from the property to be taken over by the receiver "unfinished building contracts, accounts receivable and

cash in bank," and property conveyed by appellant to the trustee "other than goods, wares and merchandise and fixtures." And it was ordered "that he deal generally as such receiver with and concerning said assets as the court may order from time to time." The trustee was further commanded to turn over and deliver to the receiver the goods, wares, merchandise and fixtures theretofore conveyed to him by appellant.

The only question presented for decision is whether or not the facts proved by this evidence, consisting wholly of an agreed statement submitted in aid of the application, were sufficient to warrant the appointment of a receiver. There was neither allegation nor proof of fraud or intent to defraud, nor that the plaintiff had a lien of any kind which he was seeking to foreclose or to preserve. And it was proved without dispute (as the complaint alleged) that the defendant owner of the property for which a receiver was appointed was an individual, and not a partnership or a corporation. In other words, the individual owner of property for which a receiver was sought and obtained was indebted to the plaintiff on an open account, and being insolvent had conveyed to a trustee for the benefit of certain other creditors to whom he was indebted greatly in excess of the value of such property, all property which he had been using in his business. And appellee desired the appointment of a receiver so that it might share in those assets with the creditors represented by the trustee.

In a recent decision, after stating two questions which were presented for decision, this court said: "As to the second question, it is enough to say that the courts of this state do not have jurisdiction to appoint a receiver for the property of an individual owner, and seize possession of it, upon mere allegations that he is indebted for borrowed money, and that he is so conduct-

ing himself as to be in danger of insolvency, without any showing that the plaintiff has a lien of any kind upon such property, created by contract, attachment, levy or otherwise. No such right existed at common law, and the statutory provision which makes threatened insolvency of a corporation cause for the appointment of a receiver (§1279, subd. 5, Burns 1914, §1222 R. S. 1881, §1300 Burns 1926) does not apply to individuals alleged to be indebted beyond their ability to pay." *State, ex rel.,* v. *Superior Court* (1924), 195 Ind. 174, 181, 144 N. E. 747.

But appellant insists that the conveyance by appellant to a trustee was within the terms of the "bulk sales law," and that, since the trustee did not give notice to the creditors before he accepted the conveyance, he was subject to "become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that came into his possession by virtue of such sale, transfer or assignment." §8054 Burns 1926, §3, ch. 49, Acts 1909 p. 122. This contention might be sufficiently answered, so far as the case at bar is concerned, by pointing out that the trial court did not charge as a receiver the trustee to whom the conveyance was made, but appointed another receiver, to whom the trustee was ordered to deliver possession of all the tangible assets in his hands. And that the question now under consideration is not for whose benefit the trustee held the property conveyed to him, but it is whether or not the trustee must surrender that property into the hands of a receiver appointed by the circuit court. However, we do not think the evidence shows such a "sale, transfer or assignment, in bulk, of the merchandise and fixtures pertaining to the conduct of a business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the

seller, transferor or assignor," as is declared by the statute (§8052 Burns 1926, §1, Acts 1909 p. 122) to be void as against creditors unless notice to the creditors be given as therein provided.   The conveyance in question was made by way of security for pre-existing debts which appellant honestly owed, and contained such provisions for redeeming from the conveyance by paying the debts secured, and for selling the property on demand of the creditors and applying the proceeds of sale to payment of the debts thereby secured, as usually are found in chattel mortgages. And "The decided weight of authority is to the effect that the giving of a chattel mortgage on a stock of goods for a *bona fide* debt does not constitute a sale, transfer, or assignment in bulk, in violation of statutes forbidding such a sale or transfer in bulk of a stock in trade, otherwise than in the ordinary course of business, without certain preliminary proceedings."   Note, 9 A. L. R. 473; *Wasserman* v. *McDonnell* (1906), 190 Mass. 326, 76 N. E. 959; *Hannah & Hogg* v. *Richter B. Co.* (1907), 149 Mich. 220, 112 N. W. 713, 12 L. R. A. (N. S.) 178, 119 Am. St. 674, 12 Ann. Cas. 344; *Noble* v. *Fort Smith, etc., Co.* (1911), 34 Okla. 662, 127 Pac. 14, 46 L. R. A. (N. S.) 455; *Lee* v. *Gillen* (1912), 90 Nebr. 730, 134 N. W. 278; *Symons Bros. & Co.* v. *Brink* (1915), 187 Mich. 43, 153 N. W. 359; *Daniels* v. *Pacific Brewing, etc., Co.* (1915), 86 Wash. 416, 150 Pac. 609; *Avery & Sons* v. *Carter* (1916), 18 Ga. App. 527, 89 S. E. 1051; *Mills* v. *Sullivan* (1916), 222 Mass. 587, 111 N. E. 605; *Symons Bros. & Co.* v. *Brink* (1916), 194 Mich. 389, 160 N. W. 638; *Farrow* v. *Farrow* (1918), 136 Ark. 140, 206 S. W. 134; *Schwartz* v. *King Realty, etc., Co.* (1920), 94 N. J. Law 134, 109 Atl. 567, 9 A. L. R. 471.

The fact that the chattel mortgage was given for the benefit of a portion of the mortgagor's creditors, to the

exclusion of other creditors, did not make it in-
4. valid, where it was given in good faith as se-
curity for honest debts, actually owing by him
to them. *Gilbert* v. *McCorkle* (1887), 110 Ind. 215,
219, 220, 11 N. E. 296; *Levering* v. *Bimel* (1897), 146
Ind. 545, 552, 45 N. E. 775; *Nappanee Canning Co.* v.
*Reid, Murdoch & Co.* (1902), 159 Ind. 614, 619, 64 N.
E. 870, 1115, 59 L. R. A. 199.

Neither fraud nor the existence of a lien in favor of
the plaintiff nor any other ground for the exercise of
equity jurisdiction being shown, and the facts not
bringing the case within any statutory cause for the
appointment of a receiver, the court erred in appoint-
ing one.

The judgment is reversed, with directions to set aside
the appointment of the receiver, and for further pro-
ceedings not inconsistent with this opinion.