CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD
COMPANY ET AL. *v.* PUBLIC SERVICE COMMISSION ET AL.

[No. 27,733.   Filed January 25, 1943.]

Beasley, O'Brien, Lewis & Beasley, of Terre Haute, and *Bert Beasley*, of Indianapolis, for appellants.

*George N. Beamer*, Attorney General, and *Urban C. Stover*, Deputy Attorney General, for appellees.

FANSLER, J.—The appellants petitioned the Public Service Commission for authority to discontinue the operation of a train serving miners living in Terre Haute who work at a mine located in Vigo County.

Appellants alleged in their petition that the train serves miners exclusively and that it does not serve the

general public; that the operation results in great and unreasonable financial loss; that only a small percentage of the miners employed in the mine in question use the train; that there are improved public highways affording convenient routes of travel to the mine; that there is not sufficient public necessity to justify the operation of the train; and that neither the public nor the operation of the railroad will be injuriously affected by the discontinuance of the train.

Evidence was heard by the commission and the petition was denied.

This action was begun in the court below seeking to set aside and enjoin the enforcement of the commission's order and ruling on the ground that the same is unreasonable and unlawful. There was a trial at which a transcript of the evidence taken before the commission and the commission's order was the only evidence offered. There was judgment for the defendants.

Error is assigned upon the overruling of a motion for a new trial, which is upon the ground that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The commission found that the petitioner had failed to show that the expense incurred in the operation of the miners' train in 1938 was $9,756.19, and that the petitioner had suffered a loss of $7,283.69 in the operation as alleged, and found that the petitioner should immediately effect economies in the operation of the train, and that the discontinuance of the train will not be in the public interest. The evidence of expense was largely theoretical, based on averages as shown by experience. The train crew expense included hours of service far in excess of the actual hours spent in operating the train. It was shown that all of the miners using the train used monthly commutation tickets; that there

was an annual expense of $420 per year for ticket sellers; $475 per year was expended for a coach cleaner, who cleans the old-style coaches used; and $280 per year for a fire builder to build fire in the stoves in the coaches. Fuel was charged for at $4.00 per ton which cost $2.10 per ton. A special engine and crew were always used to pull the two coaches, although coal cars, empty and loaded, were pulled to and from the mine. The appellants' superintendent testified that it was not good practice to haul the cars in a coal train, but no reasons or facts were given to sustain this view.

The appellants contend that the train did not serve the general public, but only one class of the public, that is, miners working at a particular mine. But the service is none the less a public service, rendered under a public franchise. The train has been operated for a long period of years. The appellants contend that the evidence shows adequate means of transportation to the mine without the train, but this may be doubted. There is a good automobile highway part of the way, but it may be reasonably concluded from the evidence that for a considerable distance the highway is difficult and sometimes impractical. There is also evidence that many of the miners did not have motor vehicles or the means of procuring them.

The fact, if it had been clearly shown, that the train was operated at a loss does not alone necessarily require the commission to consent to its discontinuance. In *N. Y. Central Railroad Co.* v. *Pub. Service Com. et al.* (1937), 212 Ind. 329, 336, 337, 7 N. E. (2d) 957, 960, we said regarding profitable or nonprofitable operation of a given service: "This is only one element of the case. The railroad company possessed the power of eminent domain. It condemned property and brought its line across the country wher-

ever and whenever it chose. Having been granted that authority by the Legislature, it owed to the public the reciprocal right of service. It was not only its privilege to make a profit from its operation, but it owed a duty of service to each community through which it passed. It is a matter of common knowledge that some communities are more profitable to the company than others, depending on population and business enterprises. Not all persons or corporations engaged in business in the commercial world, or operating a public utility, are able to realize a profit from each item of business. Merchants sometimes carry a line of goods, unprofitable as to that particular line, but necessary to accommodate customers. A railroad company operating through a community, enjoying the rights of eminent domain, should be more responsible to the community than a concern engaged in private commercial lines of business." There was no effort to show that the appellants' operation in the community, or in the state, or in its whole system, was unprofitable so that isolated operations at a loss might amount to confiscation.

The Public Service Commission is vested with discretion in requiring service. We said in *Public Service Commission et al.* v. *City of LaPorte et al.* (1935), 207 Ind. 462, 466, 467, 193 N. E. 668, 670:

"Courts will recognize that the commissioners are selected with a view to their special qualifications, knowledge, training, and experience pertinent to the subject-matter committed to their administration, and that different inferences may be reasonably drawn from given facts; that rates and regulations cannot be fixed with exactness. The power of the commission is not so limited that it is required in its orders to reach the same result that the court would reach under the same circumstances."

The train serves the miners. The mine at which the men work serves the community with fuel. It also seems to furnish tonnage, and, consequently, ▮ revenue to the appellant railroad. The commission seems to have believed that the train had not been operated economically. It may have disagreed with the opinion of the superintendent as to the propriety of hauling coal cars in the miners' train. It may have believed that the operation of an engine out of the Terre Haute yards, a six-mile shorter distance, would be less expensive than from West Clinton. It cannot be said as a matter of law that the order of the commission upon the evidence and lack of evidence is so unreasonable as to be unlawful.

Judgment affirmed.

NOTE.—Reported in 46 N. E. (2d) 230.