PUBLIC SERVICE COMMISSION OF INDIANA ET AL. *v.*
CITY OF LA PORTE ET AL.

[No. 25,941.  Filed January 9, 1935.]

*James M. Ogden,* Attorney-General, *George W. Hufsmith, Lemuel Darrow, Earl Rowley, C. V. Shields, Arthur L. Roule,* and *Schubring, Ryan, Clarke & Peterson,* for appellant.

*Leonard R. Henoch, Milton J. Sallwasser,* and *Ben C. Rees,* for appellee.

FANSLER, C. J.—On December 27, 1929, upon petition of appellant, LaPorte county, Indiana, Telephone Company, the Public Service Commission of Indiana

made an order fixing and increasing the rates to be charged the public for service and permitting the issuance of additional securities by that company. Within thirty days thereafter appellees instituted this action to enjoin the operation of the order. Issues were formed, and there was a trial by the court. The facts were found specially and conclusions of law stated thereon. A decree was entered enjoining the rates fixed in the order as unreasonable and unlawful, but holding that part of the order which fixed the value of the property of the company for rate-making purposes, and authorizing the sale of securities, to be reasonable and lawful.

Appellants separately and severally assign error upon the overruling of their motions to make the complaint more specific and to strike out parts of the complaint, and upon the overruling of their separate and several demurrer to the complaint.

Appellants' motion to make more specific and their demurrer are based upon the theory that the action constitutes a collateral attack upon the order of the Public Service Commission, and that an injunction can issue only if the orders of the commission are void. Their position is that section 78 of the Acts of 1913, as amended by the Acts of 1927, p. 747, gave appellees the right to appeal to the courts from the decision of the Public Service Commission; that this appeal must be taken in the same manner as appeals from boards of county commissioners, sitting as a court, to a circuit court; that the act is still in force, notwithstanding the Acts of 1929, p. 530; that it provides a remedy at law, and that, therefore, an action for injunction is a collateral attack and must fail unless facts are alleged which would be a sufficient basis upon which to enjoin a judgment of a court in a collateral proceeding.

The right to affect property or persons by legislation is limited by the Federal and State Constitutions,

and the statutes conferring powers upon the Public Service Commission must, if possible, be so construed as to bring them within constitutional limits. The power of the courts to confine administrative boards and commissions within their constitutional jurisdiction, and to enjoin unreasonable administrative or legislative orders or regulations, is not derived from the statute, but exists through and under the Constitution. *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.* (1908), 171 Ind. 189, 86 N. E. 328.

In passing upon the orders of the commission, the courts do not review for error, since the commission acts ministerially and the courts judicially.

These principles were discussed and approved by this court in *In re Northwestern Indiana Telephone Co.* (1930), 201 Ind. 667, 171 N. E. 65. It was pointed out that the Public Service Commission is purely an administrative or legislative body without judicial powers. The Act of 1927 was held unconstitutional insofar as it sought to empower the court to control the administrative or legislative discretion of the commission, but it was held constitutional in respect to its provision authorizing the courts to pass upon the reasonableness of the orders of the commission. The Act of 1929 covers the same subject-matter as the Act of 1927, and was obviously drawn with a view to eliminating the objectional features of the earlier act, and conforming to the decision of this court respecting the subject-matter. In the later act the word "appeal" is eliminated, and it is provided that those adversely affected by any ruling of the commission may commence an action to vacate, set aside, or enjoin the ruling or order on the ground that it is "insufficient, unreasonable, unlawful, or procured by fraud or other unlawful methods." Section 6 of the

act provides that the action shall be tried and determined as other civil actions except as to certain procedural matters expressly provided for. Appellees' complaint, therefore, constitutes a direct attack upon the order of the commission. There is no allegation that the order was procured by fraud or other unlawful methods. Reliance is placed upon allegations intended to show that the rates and values fixed are too high and, therefore, unreasonable, and that they are unlawful because unreasonably high.

The only questions presented for the determination of the trial court involve the reasonableness of the commission's order. The court properly tried the case *de novo* under the rules of procedure applicable to the trial of any civil action triable by the court without a jury. The statute provides for the introduction in evidence of a transcript of the proceedings and evidence taken before the commission. This is merely a rule of evidence designed to expedite the trial since the statute contemplates that other and different evidence pertinent to the subject-matter may be heard. In such a case the trial court is not concerned with the question of whether the rates or other orders of the commission are exactly those indicated by the evidence taken before the commission, nor with the question of whether they are the rates and orders which the court would have made under the evidence taken before the commission, if the court were sitting as an administrative commission, nor whether they are the rates and orders that the court would have made under all the evidence. The court has no rate-making power, and is not concerned with rate-making or other ministerial action except to confine the orders of the commission within reasonable bounds.

Courts will recognize that the commissioners are selected with a view to their special qualifications,

knowledge, training, and experience pertinent to the subject-matter committed to their administration, and that different inferences may be reasonably drawn from given facts; that rates and regulations cannot be fixed with exactness. The power of the commission is not so limited that it is required in its orders to reach the same result that the court would reach under the same circumstances. The law will tolerate any variation from such a result that may be accounted for by reasonable differences in views or opinions. Nor is the sufficiency of the evidence heard by the commission to sustain its findings a true criterion. The commission may make an order upon evidence which, under the rules applicable to judicial proceedings, would be wholly insufficient to sustain the finding, yet if, upon all of the facts and evidence heard by the court (which may differ from and be in addition to the evidence heard by the commission), the order seems reasonable, it will not be enjoined. Nor will the fact that a ruling of the commission seems reasonable, upon the evidence heard by the commission, prevent an injunction, if, upon all of the evidence heard before the court, it is clearly unreasonable.

Appellants assert that the Act of 1929 is merely expressive of the common law in actions where administrative officers have exceeded their authority, or where the orders were obtained by fraud, undue influence, or other cause that rendered the action void, "or are so unreasonable that the acts could not be upheld by a court of conscience, or where the administrative body acted arbitrarily, that is without any evidence of facts upon which to predicate the finding." We can find no fault with this view except that, as suggested above, we do not feel that the fact that the order was made without evidence, is sufficient to condemn it if, in fact, it is a reasonable order in view

of the facts existing at the time. There was no attempt to state a cause of action upon the ground of fraud, undue influence, or any other basis than that of unreasonableness. The facts alleged were sufficient to invoke the jurisdiction of the court. It was found specially that the order fixing the present value of the company's property at $954,005.00, and a rate of return at 7 per cent, and permitting the issuance of additional securities in the amount of $47,500.00, was not unreasonable. Cross-errors are predicated upon the insufficiency of the evidence to sustain these findings. Although there is much conflicting evidence, there were appraisals in evidence, and experts testified to facts which amply sustain these findings.

Appellants have questioned the suffiicency of the evidence to support the findings adverse to their interest. They also contend that the court has found evidentiary facts and not ultimate facts. An examination of the findings, which are lengthy, discloses that, possibly at the request of counsel, the court has stated many conclusions of fact which are not ultimate facts in issue, and perhaps included much evidence in the findings, but the essential ultimate facts have been found.

We have examined the evidence for the purpose of ascertaining whether there is any evidence that sustains the court's finding that the rate fixed by the commission is so unreasonable as to prejudice the constitutional rights of appellees.

Finding 57 is to the effect that the rates allowed by the commission will provide revenue in excess of the reasonable requirements of the intervenor, and are unreasonable. It is disclosed that this conclusion of the court was based upon other findings involving the allowances made by the commission for extraordinary depreciation due to unusual sleet storms, and for ordin-

ary depreciation. The allowance for ordinary depreciation was $47,477.57. The court found that this amount was computed on a basis of 5 per cent of $949,551.43, which exceeds the value of the tangible property of the company, and that therefore the allowance is unreasonable. But it is the amount allowed, and not the method of arriving at it, that is important. It is recited in finding 60 that there was evidence introduced before the commission and at the trial of an estimate made by an engineer employed by the commission, fixing the annual depreciation of the company's properties at $42,878.00, and that the engineer and manager of the company prepared an exhibit which was in evidence, showing depreciation upon a unit basis, and showing annual depreciation to be $61,495.60. There also was evidence that the intervenor was required to trim trees, and that the amount necessary for deferred tree trimming was $7,500.00, and that there was an estimated annual requirement of $3,000.00 per year to take care of tree trimming. No allowance was made for tree trimming by the commission. The trial court seemed to rely upon the testimony of the commission's engineer, estimating annual depreciation at $42,878.00, and for that reason found "that an allowance annually for depreciation in the amount of $47,477.57 is unreasonable." We have examined the testimony of the commission's engineer referred to. The figures upon which his testimony is based are not in evidence. He estimated depreciation at $38,878.00, and added $4,000.00 per year for extraordinary depreciation due to sleet storms, etc., and so his estimate for depreciation properly should be considered without the addition of the $4,000.00. He made his computations, however, according to his testimony, on the cost of the property to the company depreciated. The evidence shows the present condition of the property to be approximately 83 per cent. If the witness had

estimated depreciation upon the full cost of the property to the company without depreciation (the so-called straight line method), the figure arrived at would be $46,841.00, only $636.57 less than the amount allowed by the commission.

In *United Rys. & Elec. Co. of Baltimore* v. *West* (1930), 280 U. S. 234, 50 S. Ct. 123, it was held that the allowance for annual depreciation for rate-making purposes must be based on present value, and that rates fixed by Public Service Commissions, where depreciation is computed upon some other basis, and which provide returns so inadequate as to result in confiscation of property, violate the due process clause of the Fourteenth Amendment of the Federal Constitution. The question involved is a Federal one, and the decisions of the United States Supreme Court are controlling.

It may be noted that the Interstate Commerce Commission has adopted the straight-line method of computing depreciation. 177 I. C. C. p. 408; *Lindheimer et al.* v. *Illinois Bell Telephone Co.* (1934), 292 U. S. 151, 54 S. Ct. 658.

The cost of the company's property, shown by the evidence, is $572,107.26. The present value depreciated, as shown by the commission's engineer, and that was the lowest value shown, is $776,292.00. If the commission's engineer had based his estimates upon cost instead of cost depreciated, it would have approximated the commission's allowance. If he had based it upon present value, even depreciated, his estimate would have exceeded the $61,000.00 estimate by the company's engineer. Since there was no other evidence upon which the court could base its finding that the allowance for depreciation is unreasonable, we are forced to the conclusion that there is no evidence

supporting that finding, and that a much larger allowance might have been justified under the evidence.

The commission's allowance of $8,770.00 annually for extraordinary depreciation, due to storm damage, was found to be unreasonable. The lowest estimate of the requirements for this purpose was $4,000.00 annually, testified to by the commission's engineer. There was much conflict in the evidence as to the frequency and severity of the storms, and the amount of rebuilding and repairs attributable to the storm damage, but when it is considered that, by the undisputed evidence, approximately $3,000.00 is required for tree trimming, for which the commission made no allowance, and that the allowance for depreciation was lower than might have been sustained, and that the amount of returns from the rates established will, according to the commissioner's estimate, fall short of paying what both the commission and the court found to be a reasonable return by $1,478.79, it can hardly be said that the difference of opinion between the commission and the court as to the amount which should be allowed for extraordinary storm damage is a sufficient basis for enjoining the entire rate structure as so unreasonable as to justify the intervention of a court of equity.

Where there is evidence supporting the commission's order of such a substantial character that reasonable men might reasonably rely upon it, the order should not be enjoined, notwithstanding there may be other conflicting evidence which to the court seems of equal or greater weight.

> "The presumption in favor of the validity of an order made by the commission . . . is strong, and a clear case must be made out to justify the overthrow of its action." *Pittsburgh, etc., R. Co.* v. *Railroad Com., supra.*

> "When the Commission exercises its authority upon due hearing, as prescribed, and without error

in the application of rules of law, its findings of fact supported by substantial evidence are not subject to review. It is not the province of the courts to substitute their judgment for that of the Commission." *State of Florida* v. *United States of America* (1934), 54 S. Ct. 603, 608, 78 L. Ed. 1077; *New York, C. & St. L. R. Co.* v. *Singleton* (1934), ante, 449, 190 N. E. 761.

It is argued by appellees that the evidence shows that the unused reserve for depreciation accumulated during the life of the company is more than enough to bring the company's depreciable properties to 100 per cent condition, and that therefore an increase in the allowance for depreciation is not justified. The correctness of this conclusion depends upon the items of evidence which are relied upon. It appears that for many years the company charged depreciation at the rate of 6 per cent; that some years ago the commission reduced this rate to 4 per cent. It is now increased to 5 per cent. The company's properties have grown and are growing. The amount unexpended in the depreciation reserve approximates what the experts testifying believed to be the amount of accrued depreciation to the company's properties. The amount allowed by the commission's order for current depreciation would seem, under all of the evidence, barely enough. In *Board of Public Utility Comm. et al.* v. *New York Tel. Co.* (1926), 271 U. S. 23, it was held that a credit balance in reserve for depreciation cannot be used to make up the deficiency in current rates which are not sufficient to yield a just return, including a proper allowance for current depreciation.

Judgment reversed, with instructions to sustain appellants' motions for a new trial.