PUBLIC SERVICE COMMISSION OF INDIANA ET AL. *v.* INDIANAPOLIS RAILWAYS, INC.

[No. 28,355.   Filed January 23, 1947.   Rehearing Denied February 25, 1948.]

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy Attorney General, and *Urban C. Stover,* Special Assistant, for appellants.

*Gilliom, Armstrong and Gilliom,* of Indianapolis, for appellee.

O'MALLEY, J.—The appellee commenced this action in the Circuit Court of Marion County, Indiana, to enjoin the enforcement of rates fixed by the Public Service Commission of Indiana and to prohibit interference with the collection of higher rates filed with said commission. The theory of the action was that the rates set were unreasonable and confiscatory, and that those filed as emergency rates were the lowest possible charges that could be made without jeopardizing the credit and solvency of the appellee.

A hearing was conducted by the commission and at its conclusion the request for the adoption of higher emergency rates was refused. Within the time allowed by law, and on June 28, 1946, the appellee filed its complaint for review and to enjoin.

The court, in reviewing the action of the commission, received additional evidence to that given at the hearing before the commission, and at the conclusion of the hearing and in conformity with the governing statute, § 54-436, Burns' 1933, the court certified all additional evidence, received in the review, back to the Public Service Commission for its consideration. The commission, after receiving and examining said additional evidence, reaffirmed its prior position in regard to the rates under review and so informed the court. Thereupon the court adopted its finding and conclusions of law and entered the judgment from which this appeal was taken.

From the finding it may be concluded that the appellee was incorporated in 1932; that the purpose of incorporation was to take over and operate a public transportation system for the carrying of passengers; that it utilizes, in its business, a great number of streetcars, trackless trolleys, and busses; that its bonds outstanding total $4,685,100; that the interest on said bonds and

other costs of operation have been increasing year by year from $3,566,306.71 in 1942 to $5,944,475.36 in 1946; that the costs of operation in 1947 would exceed those of 1946; that an emergency arose in 1946 which necessitated fares of not less than 10 cents cash, three tokens for 25 cents and two cents transfer charge; that said fares had been charged under the terms of an interlocutory injunction issued on August 12, 1946; that there had been a gradual reduction in the number of passengers carried in 1946 and 1947; that wages and salaries had been increased materially and unless the rates were likewise increased the credit of the appellee would become impaired and great and irreparable injury would be sustained. It may also be concluded from the finding that the rate schedule fixed by the Public Service Commission on January 9, 1946, which was the basis of the proceeding to review, would be insufficient to provide an adequate return on the investment value of almost eight million dollars and the present value of more than fourteen million dollars.

This matter was before this court on an appeal from the granting of an interlocutory order for a temporary injunction. *Public Service Commission* v. *Indianapolis Rys.* (1947), *ante*, p. 30, 72 N. E. (2d) 434. In that opinion this court was presented with some of the claims that are here asserted. One of such claims is that the lower court was precluded from a consideration of the questions asserted by the appellee to the effect that the rates set by the commission were both unreasonable and confiscatory, if there was some evidence before the commission which supported its finding. However, this court in its opinion on the prior appeal stated that "this rule applies only to the sufficiency of the evidence to support the finding of the

board or commission. It does not apply where the order is being questioned as unreasonable or confiscatory." It is here claimed by the appellants that the injunction granted by the lower court amounted to a fixing of rates. The same claim was made in the prior appeal and it was answered as follows: "If this be true the order is invalid as the fixing of rates for a utility is not a judicial function and can only be done by the commission. As we view this order, however, the same does not attempt to fix rates but merely restrains the appellant from interfering with the rate charged *pendente lite*. . . . ."

The same reasoning applies to the present claims. The commission was enjoined from interfering with the emergency rates until it fixed rates that were not unreasonable or confiscatory. If the court were prohibited from granting such relief, it would mean that property could be taken without just compensation, and that there would be no relief from an order of the commission fixing rates excepting to enjoin its enforcement. Equity has never been that helpless. The court had the right to examine the rates fixed by the commission and to determine whether or not they were unreasonable and confiscatory. It is evident that if the court did find such rates to be confiscatory, it then could examine the higher rates, a schedule of which had been filed with the commission. If the court believed that any rates lower than the rates thus requested and refused would be unreasonable and confiscatory, it had the power to protect the property of the appellee from such dire results by enjoining the setting of any rates lower than those requested and refused. It seems to us that there was no attempt, on the part of the court, to usurp the rights and duties of the commission. The steps taken have been used on many occasions by utili-

ties when a utility commission failed to preserve utility property from confiscation by the making of an order fixing rates which were insufficient to protect the credit and solvency of such utility. See *Smith* v. *Ill. Bell Tel. Co.* (1926), 270 U. S. 587, 70 L. Ed. 747; *Newton* v. *Consolidated Gas Co.* (1922), 258 U. S. 165, 66 L. Ed. 538; *The People* v. *Finnegan* (1946), 393 Ill. 562, 66 N. E. (2d) 690.

Much has been said in this appeal concerning the method of proof used in ascertaining base value and proper return on the investment in the trial of this cause. The governing statute, § 54-203, Burns' 1933 as amended in 1947, ch. 307, Acts of 1947, provides that the costs of reproduction may be taken into account in arriving at a fair value of the property of the utility. The statute is broad enough to permit the commission and the reviewing court to utilize the costs at the time of construction or purchase, the costs of bringing the property to its present state of efficiency, and also the reproduction costs at current prices, less depreciation, in order to determine present fair value. We believe the evidence offered and received tended to prove values in conformity with the yardstick furnished by the Legislature.

It is claimed by appellants that the appellee could not integrate its bus and electric lines and secure rates for the system as a whole. With this we cannot agree. Under § 47-1227 *et seq.*, Burns' 1940 Replacement, ample power is given the commission to control the rates of motor vehicles, and its right and duty to fix rates for street railways and trolley busses has not been and cannot be questioned. There could be no reason why the above named means of transportation could not be utilized by one utility in an integrated system for the convenience and comfort of its patrons,

some of whom would be entirely without transportation service if one or the other were eliminated. Each kind of service can and should be made supplementary to each of the other kinds of transportation service. See § 47-1226, Burns' 1940 Replacement.

It is contended that it was error for the court to receive evidence of matters which occurred subsequent to the filing of the complaint for review. If an objection was made to this evidence during the hearing on any ground, that fact or such objection is not shown in the appellants' brief. We have held, on various occasions, that to raise a question on appeal, it must be presented to the trial court. We have also held that mere reference to an exhibit by number without stating the substance thereof, or a mere reference to a question propounded without stating the gist of the question and also the objection made thereto, presents no question for reversal on appeal. *Greek* v. *Seward* (1944), 222 Ind. 211, 213, 51 N. E. (2d) 3; *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 12, 51 N. E. (2d) 474; *Wise* v. *Curdes* (1942), 219 Ind. 606, 616, 40 N. E. (2d) 122, 126; *Eastburn* v. *Bd. of Finance, Union Twp.* (1935), 100 Ind. App. 200, 194 N. E. 860; *Guardian Life Ins. Co. of America* v. *Barry* (1941), 109 Ind. App. 286, 32 N. E. (2d) 599; *Vaughn Building Company* v. *State of Indiana* (1933), 97 Ind. App. 556, 185 N. E. 656. We still adhere to the above pronouncements and authorities and hold that in the absence of an objection in the court below no question is presented.

In support of its position in regard to the reception of evidence of happenings subsequent to the time of the commencement of the action the appellants argue that we should overrule or distinguish the case of *Public Service Commission* v. *Frazee* (1919),

188 Ind. 573, 122 N. E. 328. The reason assigned is that it causes delays in court and that a claimed emergency taking place in June, 1946, which formed the basis of the claim for increased rates, should not be provable by evidence of increased labor costs in December, 1946. The emergency in the instant matter might be defined as a happening or development that was not foreseen and was not normal or customary and which would cause additional outlays of money for a considerable period of time. The evidence of labor costs in December, 1946, was merely a part of the development of higher operating costs and the court was entitled to have evidence of the continuance of the spiral of costs that gave rise to the complaint of the appellee. While there may be cases in which such evidence would be improper, certainly nothing has been shown in the instant cause that would create an exception to the general rule announced in the Frazee case, *supra,* which permits evidence of happenings subsequent to the time of the issuance of the order by the commission so that the court can determine whether the order is valid or invalid. That authority should not be distinguished or overruled for any reason shown in this appeal.

It is asserted that the lower court erred in refusing to permit the witness Kleinman to answer the following questions, to-wit:

"Give an opinion as to the propriety of the plaintiff in going back and setting up a depreciation account which it had failed to do in the past.

"If it should appear from the testimony here of the evidence that petitioner, prior to January 1, 1946, failed to take depreciation for the years 1942 to 1946, what in your opinion from your experience is the proper accounting method by which they can go back and get that depreciation which they failed to get in the past?"

The witness was called by the appellants. No offer to prove was set forth in the motion for a new trial. What the testimony of the witness would be if ■ he had been permitted to answer the questions propounded has not been set forth. In the absence of an offer to prove no question can be based upon the above claim. *Zieg* v. *R. L. Romy Investment Co.* (1940), 108 Ind. App. 518, 27 N. E. (2d) 387; *Stephenson* v. *Stephenson* (1942), 112 Ind. App. 191, 44 N. E. (2d) 208; *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157.

It is also claimed that the appellee did not sustain its burden in showing that the amount of the depreciation taken was not excessive. Depreciation was ■ but one fact to be considered by the court in determining whether or not the rates fixed by the commission were unreasonable and confiscatory. The court found that the present fair value of the property of appellee, at the time of the hearing, was $14,750,000. It further found that the rates fixed by the commission were insufficient to provide any return on such value. In effect the court determined the question of depreciation against the contention of the appellants when it found that the rates fixed were insufficient to give any return on the investment even if no depreciation had been allowed. The finding has not been attacked by a claim or showing that there was no evidence to support it, or that it was in any particular contrary to law. No question is presented for our consideration by the above claim. *Dickason* v. *Dickason* (1940), 107 Ind. App. 515, 18 N. E. (2d) 479, 25 N. E. (2d) 1014.

The remaining contention of the appellants concerns the money collected under the terms of the temporary

injunction, and which was held intact during the pendency of the action. In the light of the finding and judgment of the lower court, justice has been best served by the order of the court releasing such funds to the appellee. The rates charged did not exceed the rates which were determined by the court to be the minimum necessary to safeguard both the interests of the public and of the railway company. The only method used to question the appellee's right to this money was by means of a motion to modify the judgment which requested that all that part of the judgment which made provision for the release of such funds to the appellee should be stricken therefrom. The appellants have not and could not predicate any error upon the overruling of said motion. The conclusions of law are not questioned; the judgment followed the conclusions of law and was the logical result of such conclusions, therefore no question is presented on the overruling of the motion to modify the judgment. Whether or not the conclusions follow the finding is not presented, and on that matter we express no opinion.

For the reasons set forth the judgment of the Marion Circuit Court is affirmed.

Emmert, C. J., not participating.

NOTE.—Reported in 76 N. E. (2d) 841.