230 Ind. 277 (1951)
100 N.E.2d 888
STATE EX REL. PUBLIC SERVICE COMMISSION
v.
MARION CIRCUIT COURT ET AL.
No. 28,819.
Supreme Court of Indiana.
Filed October 1, 1951.
Dissenting opinion filed January 25, 1952.
*280 J. Emmett McManamon, Attorney General; Clyde H. Jones, Chief Counsel; Frank E. Coughlin, Deputy Attorney General; and Walter F. Jones, Public Counselor, for relator.
*281 Lloyd D. Claycombe, pro se; Thomas D. Stevenson; Patrick J. Smith; and Thompson, O'Neal & Smith (of counsel), all of Indianapolis, for respondents. Thomas D. Stevenson; Patrick J. Smith; and Thompson, O'Neal & Smith (of counsel), all of Indianapolis, for Indiana Bell Telephone Company as Amici Curiae.
BOBBITT, J.
This action arises under the Acts of 1929, ch. 169, § 1, p. 530, being § 54-429, Burns' 1951 Replacement.
On November 21, 1950, the Indiana Bell Telephone Company filed its petition with the Public Service Commission of Indiana requesting an increase in rates, tolls and charges intrastate and for certain increases in charges for its exchange services. Said petition was properly docketed by said commission and after various hearings thereon the commission, on May 31, 1951, issued and promulgated its final order therein prescribing a new schedule of rates and charges for said company. On June 15, 1951 said company filed its action in the Marion Circuit Court under the provisions of § 54-429, Burns' 1951 Replacement, supra, to set aside and vacate said order, on the ground that it was insufficient, unreasonable and unlawful, and was procured by unlawful means, and as ancillary thereto, requested a temporary injunction to enjoin the Public Service Commission from interfering, or attempting to interfere, with the charging and collecting of a temporary schedule of rates as proposed in the complaint, until the final determination by the Public Service Commission of reasonable, adequate and nonconfiscatory rates to be charged by the company, and upon final hearing, that said order be vacated and set aside and that the commission be permanently enjoined from its enforcement.
*282 After hearing on the company's petition for temporary injunction the Marion Circuit Court, on June 28, 1951, entered its order therein which, omitting caption and signatures, is as follows:
"TEMPORARY INJUNCTION.
"Come the parties herein by counsel and, this cause having been submitted upon plaintiff's application for a temporary injunction at the time and place fixed therefor and the court having heard the evidence and the arguments of counsel and being duly and fully advised in the premises, it is now
"ORDERED that the plaintiff shall file with the Public Service Commission of Indiana the schedules of local exchange rates for plaintiff's services within the State of Indiana set out in the complaint; and it is further
"ORDERED that the plaintiff may make said schedule of local exchange rates effective as of plaintiff's regular billing dates as they shall occur next after said filing; and it is further
"ORDERED that plaintiff may charge and collect the rates included in said schedule from and after the filing and effective date aforesaid and until the further order of the court herein; and it is further
"ORDERED that the defendants be and they are hereby enjoined and restrained from interfering or attempting to interfere with the charging and collecting by plaintiff of the rates for its services included in said schedules until the further order of the court herein; and it is further
"ORDERED that the plaintiff shall enter into a written undertaking, with surety to be approved by the court, to the defendants for the payment of all damages and costs which may accrue by reason of this injunction; and it is further
"ORDERED that if the order of the defendant commission herein involved shall not be vacated or set aside or the enforcement thereof enjoined upon the trial herein or upon the determination of any *283 appeal which may be taken from the judgment entered upon said trial, the plaintiff shall make refund to its subscribers as follows:
"a. To each subscriber paying for local exchange service at the rate therefor specified in said schedule of local exchange rates, the refund shall be equal to 86.5% of the difference between the amount so paid and the amount which would have been payable for the same service at the rate therefor specified in plaintiff's local exchange tariff in effect immediately prior to the date hereof.
"b. To any person who may become entitled to a refund hereunder who shall then be a subscriber of the plaintiff, such refund shall be made by crediting the amount thereof to such subscriber upon plaintiff's next billing for service; provided, however, that upon the request of such subscriber the amount of said refund shall be paid in money; and it is further
"ORDERED that plaintiff shall enter into a written undertaking, with surety to be approved by the court, for the making of all refunds which may be required under the foregoing provisions."
The Public Service Commission of Indiana then filed its complaint in this court for writ of prohibition and mandate asking that the Marion Circuit Court and the Judge thereof be mandated to withdraw and set aside said order of temporary injunction, and that it be prohibited from any further proceedings therein.
Respondents herein filed an answer and response and a brief in support thereof. We have, however, not been favored with a brief by relator or by anyone in its behalf.
While other questions are presented by respondents' brief only three need be considered in determining this action. They are:
First: Did the Marion Circuit Court have jurisdiction of the subject matter and of the parties?
*284 Jurisdiction is the right, authority and power to hear and determine a cause of action. Lantz v. Maffett et al. (1885), 102 Ind. 23, 26 N.E. 195; Freestone v. State ex rel. Advance-Rumely Co. (1934), 98 Ind. App. 523, 176 N.E. 877; 50 C.J.S., Jurisdiction, pp. 1089 to 1092; 14 Am. Jur., Courts, § 160, p. 363.
This action was commenced in the Marion Circuit Court to vacate, set aside and enjoin the enforcement of an order of the Public Service Commission[1] on the ground that such order was insufficient, unreasonable and unlawful.
Acts of 1929, ch. 169, § 1 at p. 530, being § 54-429, Burns' 1951 Replacement, supra, provides:
"Section 1. Be it enacted by the general assembly of the State of Indiana, That any person, firm, association, corporation, city, town or public utility adversely affected by any decision, ruling, order, determination, requirement or direction of the public service commission may commence an action in the circuit or superior court of any county in which that portion of the utility which is the subject matter of the procedure before the public service commission operates or seeks to operate, against the commission to vacate or set aside or enjoin the enforcement of any such decision, ruling, order, determination, requirement or direction, on the ground that the same is insufficient, unreasonable, unlawful, or procured by fraud or other unlawful methods."
This section of the statute expressly vests jurisdiction in the Marion Circuit Court to hear and determine actions to vacate, set aside or enjoin the enforcement of any decision, ruling, order, determination, requirement or direction of the Public Service *285 Commission on the grounds therein set out. (§ 54-429, Burns' 1951 Replacement, supra.)
The complaint alleges that the order was insufficient, unreasonable and unlawful, and was procured by unlawful means, and this is sufficient to bring the subject matter of the action within the jurisdiction of the court. Public Service Commission v. City of LaPorte (1935), 207 Ind. 462, 468, 193 N.E. 668.
The Marion Circuit Court also has original jurisdiction in all cases at law and equity, except as otherwise provided by statute, Acts of 1881 (Spec. Sess.), ch. 24, § 3, p. 102; § 4-303, Burns' 1946 Replacement; and the case at bar does not come within the exceptions noted. The Acts of 1899, ch. 233, § 1, p. 537, being § 3-2101, Burns' 1946 Replacement gives express jurisdiction to circuit courts to issue injunctions.
This court in State, ex rel. v. Gleason (1918), 187 Ind. 297, at pp. 298, 299, 119 N.E. 9, in determining the jurisdiction of the Vigo Superior Court to issue a temporary injunction construed two sections of earlier statutes containing provisions similar to § 54-429, Burns' 1951 Replacement, supra, and § 4-303, Burns' 1946 Replacement, supra, said:
"By the act creating it the Vigo Superior Court was given general jurisdiction at law and in equity, and by § 14 (Acts 1881 p. 95) of the act it was expressly given power to grant restraining orders and injunctions. It thus appears that the court had general jurisdiction of the subject-matter of the action and had power to grant injunctions in proper cases. It is not denied that the court had obtained jurisdiction of the parties to the proceeding. It has been uniformly held that a court, which has jurisdiction of the subject-matter of an action and which has obtained jurisdiction of the parties, has power to hear and determine such action."
*286 We concur in the reasoning and conclusions reached by Judge Lairy in the above quotation and they apply with equal force to the issues presented in the case at bar.
The Marion Circuit Court would have the right and power to review the order of the Public Service Commission out of which this cause arises, in the absence of express statutory authority. Public Service Commission v. City of LaPorte (1935), 207 Ind. 462, 193 N.E. 668, supra; Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 39, 72 N.E.2d 434; State ex rel. Ind'p'ls. Ry. v. Superior Ct. (1947), 225 Ind. 301, 304, 74 N.E.2d 912; The Lake Erie and Western R.R. Co. v. Cluggish et al. (1896), 143 Ind. 347, 42 N.E. 743; 43 Am. Jur., Public Utilities and Services, § 224, p. 720.
Second: Having determined that the Marion Circuit Court had jurisdiction of the subject matter and of the parties, we now consider whether or not it was within its jurisdiction in issuing a temporary injunction restraining the Public Service Commission from interfering with a rate charged pendente lite under the terms and conditions fixed in the order.
Circuit and superior courts have the power to enjoin the enforcement of an order of the Public Service Commission which is insufficient, unreasonable, unlawful, or procured by fraud or other unlawful methods: § 54-429, Burns' 1951 Replacement, supra; Southern R. Co. v. Railroad Com., etc. (1908), 42 Ind. App. 90, 101, 83 N.E. 721; Public Service Commission v. City of LaPorte (1935), 207 Ind. 462, 464, 465, 193 N.E. 668, supra; Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 40, 72 N.E.2d 434, supra; State ex rel. Ind'p'ls. Ry. v. Superior Ct. (1947), 225 Ind. 301, 304, 74 N.E.2d 912, supra; and *287 to make such further orders as they may deem necessary to preserve the solvency of the utility or carrier in status quo pending a final determination of the sufficiency, reasonableness, and validity of the rates attacked, including the issuance of a temporary injunction to prohibit the Public Service Commission from interfering with a temporary rate charged pendente lite. Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 40, 72 N.E.2d 434, supra; State ex rel. Ind'p'ls. Ry. v. Superior Ct. (1947), 225 Ind. 301, 304, 74 N.E.2d 912, supra; Tuf-Tread Corp. v. Kilborn (1930), 202 Ind. 154, 157, 172 N.E. 353; State ex rel. Fry v. Superior Court of Lake County (1933), 205 Ind. 355, 186 N.E. 310; Wise v. Curdes (1942), 219 Ind. 606, 617, 40 N.E.2d 122; Willis v. Dictograph Sales Corporation (1944), 222 Ind. 523, 54 N.E.2d 774; High  Law of Injunctions, Fourth Edition, Vol. 2, § 1308; 28 Am. Jur., Injunctions, § 15, p. 208.
Relator contends that the Marion Circuit Court exceeded its authority when it issued a temporary injunction against the Public Service Commission enjoining and restraining it from interfering with the charging and collecting of the rates included in the schedules submitted by the company and approved by said court, in, that by said order it undertook to fix and determine temporary rates and charges.
In Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 72 N.E.2d 434, supra, wherein the facts were similar to those in the case at bar, this court at pp. 39 and 40 said:
"Appellant insists that the order complained of amounts to a fixing of rates by the trial court. If this be true the order is invalid as the fixing of rates for a utility is not a judicial function and can only be done by the commission. As we view this order, however, the same does not attempt to *288 fix rates but merely restrains the appellant from interfering with the rate charged pendente lite on terms and conditions which protect appellant and appellee's customers in case the final judgment in the action should be against the appellee as this order provides for an adequate indemnifying bond. Had this order not been made and should the final judgment be in favor of the appellee, then it would suffer an irreparable injury. The granting of this injunction was within the sound discretion of the trial court and will not be disturbed unless contrary to some rule of equity."
This court also said in State ex rel. Ind'p'ls. Ry. v. Superior Ct. (1947), 225 Ind. 301, 74 N.E.2d 912, supra, at page 304:
"It is our opinion that when relator's suit was commenced the Marion Circuit Court took full jurisdiction in this matter to the exclusion of all other courts. This being true, the Marion Circuit Court not only has the power to determine whether or not the rate schedule, which is attacked, should finally be set aside, but also, to determine the right, if any, of the relator to fix and collect pendente lite a fare different from the rate sought to be set aside. Our conclusion on this point would be the same even in the absence of the provision above quoted of § 54-430, Burns' 1933."
Again in Public Serv. Comm. v. Indianapolis Rys. (1948), 225 Ind. 656, 76 N.E.2d 841, it was contended that an injunction granted by the lower court amounted to the fixing of rates and this court, at pp. 661 and 662, said:
"The commission was enjoined from interfering with the emergency rates until it fixed rates that were not unreasonable or confiscatory. If the court were prohibited from granting such relief, it would mean that property could be taken without just compensation, and that there would be no relief from an order of the commission fixing rates excepting *289 to enjoin its enforcement. Equity has never been that helpless. The court had the right to examine the rates fixed by the commission and to determine whether or not they were unreasonable and confiscatory. It is evident that if the court did find such rates to be confiscatory, it then could examine the higher rates, a schedule of which had been filed with the commission. If the court believed that any rates lower than the rates thus requested and refused would be unreasonable and confiscatory, it had the power to protect the property of the appellee from such dire results by enjoining the setting of any rates lower than those requested and refused. It seems to us that there was no attempt, on the part of the court, to usurp the rights and duties of the commission. The steps taken have been used on many occasions by utilities when a utility commission failed to preserve utility property from confiscation by the making of an order fixing rates which were insufficient to protect the credit and solvency of such utility."
We think these cases correctly decided the same question which is now before us.
The power to enjoin the enforcement of an unlawful, insufficient or unreasonable order of the Public Service Commission carries with it the authority to make an order permitting the charging of a schedule of rates sufficient to preserve the solvency of the utility or carrier in status quo and to prevent the confiscation of its property, pendente lite, by permitting the utility or carrier, during such time, to charge a schedule of rates which are not confiscatory. The order of which respondents complain, does no more than this. It does not attempt to fix rates, but merely permits the petitioner (company) to charge a schedule of rates pendente lite, which will permit it to operate, until a final determination of the questions raised by its petition in the trial court, without a day by day confiscation of its property and such as will *290 dispel the probability of incurring an irreparable injury in the event it is successful in finally establishing a higher schedule of rates. Further evidence that the purpose of said order is to maintain the status quo pendente lite, and not the fixing of rates, is the provision for a refund to the rate payers of 86.5% of the difference between the rates permitted by the order and those in effect immediately prior to the date thereof, in the event petitioner is not succesful in its action to set aside the order of the Public Service Commission.
Third: Relator contends that the Marion Circuit Court exceeded its jurisdiction because the order for temporary injunction contained no finding.
In considering this question it must be kept in mind that the proceeding upon which this action rests was one for the interlocutory order granting a temporary injunction and not on the final merits of the case. The rule defining the state of facts necessary to be determined in such cases was correctly and concisely stated by this court in Tuf-Tread Corp. v. Kilborn (1930), 202 Ind. 154, 156, 172 N.E. 353, supra, as follows:
"Upon an application for an interlocutory order granting an injunction, it is not necessary that such a case should be made out as would entitle the plaintiff to relief at the final hearing. It is sufficient if the court finds upon the pleadings and evidence such a state of facts as makes the transaction a proper subject for investigation in a court of equity."
See also: Weist v. Dirks (1939), 215 Ind. 568, 569, 20 N.E.2d 969; Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 41, 72 N.E.2d 434, supra; 43 C.J.S., Injunctions, § 200(b), p. 924; 28 Am. Jur., Injunctions, § 12, p. 204.
*291 Because of the nature of the proceedings herein special findings even though had they been requested, were not required to be made. Starr v. Swain (1914), 182 Ind. 313, 315, 106 N.E. 357; Hutchinson v. Trauerman (1887), 112 Ind. 21, 25, 13 N.E. 412; Beckman Supply Co. v. Newell (1918), 68 Ind. App. 679, 118 N.E. 962; (Tr. denied 12-13-1918).
The question of the omission of a general finding from an order can properly be raised in an original action in this court only if such omission divested the trial court of jurisdiction.
If there is a defect in the order of the Marion Circuit Court because it failed to contain a finding, we believe it is a defect in form and not in substance and could, and would, have been corrected by the trial court had it been called to the attention of the judge thereof. It has long been the settled law of this state that courts of appeal will not reverse a judgment on appeal for any defect in form which, by law, might be corrected by the court below. Section 2-3231, Burns' 1946 Replacement; Acts of 1881 (Spec. Sess.), ch. 38, § 659, p. 240.
The defect in the judgment here complained of, if any, is such that it might be corrected by the trial court and such as not to require a reversal by this court on appeal and, therefore, it cannot be such a defect or error as to impair or divest the trial court of jurisdiction.
The Marion Circuit Court had jurisdiction of the subject matter and of the parties herein, and such jurisdiction was not impaired or divested by the failure of the order for a temporary injunction to be preceded by a finding.
Prohibition is an extraordinary remedy and will not issue here unless respondent court has stepped *292 without the bounds of its jurisdiction. State ex rel. Emmert v. Hamilton Circuit Court (1945), 223 Ind. 418, 421, 61 N.E.2d 182, 159 A.L.R. 1279; § 3-2201, Burns' 1946 Replacement.
Relator has failed to show where respondent Marion Circuit Court has either exceeded or lost its jurisdiction in this case.
The temporary writ heretofore issued herein is dissolved and a permanent writ is denied.
Emmert, J., dissenting.
NOTE.  Reported in 100 N.E.2d 888.

DISSENTING OPINION
EMMERT, J.
This is a case of great importance not only to the rate payers and the utility, but also in our field of public administrative law. Since the majority opinion departs from the many well considered cases of this court, as well as the Supreme Court of the United States, involving constitutional provisions for the separation of judicial powers from legislative powers, and well recognized rules limiting jurisdiction of courts, the errors involved should not go unnoticed in the precedents of this court.
The temporary writ of prohibition should have been made permanent because the Marion Circuit Court had no jurisdiction to enter the judgment it did. The judgment is void (I) because it violated § 1 of Article 4 and § 1 of Article 3 of the Constitution of Indiana,[1] and *293 (II) the temporary injunction was void for want of any finding whatever to support it.
When a particular judgment is questioned to determine if it is void for want of jurisdiction, the exclusive test is not whether the court had jurisdiction of the parties and of the subject matter. "There are in general three jurisdictional elements in every valid judgment, namely, jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment." 1 Freeman, Judgments (5th Ed.), 444, 445, § 226.[2]
"This well-established doctrine that a judgment beyond the court's power is invalid, is not limited in its application to any particular kind of judgment nor is it peculiar to the judgments of any particular court. Irrespective of the character or dignity of the tribunal pronouncing the decision, whether of inferior, limited or superior general jurisdiction, it must confine its determination within the authority it possesses under the law and the case." 1 Freeman, Judgments (5th Ed.), 735, § 354. This authority was recently cited with approval in Underhill v. Franz (1951), 230 Ind. 165, 173, 101 N.E.2d 264, 267, wherein we unanimously held that a judgment approving a viewer's and surveyor's report for repair of that part of a ditch which increased the length of the ditch to be cleaned by more than 10 per cent, was void for want of jurisdiction *294 because the statute limited such amendment to 10 per cent of the original petition. The court did not have jurisdiction to enter the excessive part of the particular judgment it did enter.[3]
Although a court may have jurisdiction of the subject matter, of the person and of the particular class of cases, such as would be the case where a plaintiff in the circuit court sued a defendant on a valid overdue promissory note and properly obtained jurisdiction of the person of the defendant, who would contend that the trial court, on a finding that the plaintiff should recover of and from the defendant the sum of $100 and costs, would then have jurisdiction to imprison the defendant to collect the liquidated debt, in violation of § 22 of our Constitution? Obviously the court could not have jurisdiction to enter this particular judgment.
In prohibition matters this court has consistently followed the rule "which is well supported by authority from other jurisdictions, that where a court of equity has no jurisdiction to issue injunctions and restraining orders in the particular class of cases, this court will intervene by writ of prohibition to prevent the exercise of jurisdiction in a case within that class. State ex rel. L'Abbe et al. v. District Court (1899), 26 Colo. 386, 58 Pac. 604, 46 L.R.A. 850; State ex rel. Kenamore v. Wood et al. (1900), 155 Mo. 425, 56 S.W. 474, 48 L.R.A. 596, 50 C.J. 666." State ex rel. Fry v. Superior Court of Lake County (1933), 205 Ind. 355, 360, 361, 186 N.E. 310. This principle that equity has no jurisdiction to issue an injunction to protect a permit to sell alcoholic beverages, since there is no property right in such a permit, has been consistently followed by this court. State ex rel. v. Montgomery Circuit Court (1945), 223 Ind. 476, 62 N.E.2d 149; State *295 ex rel. Ind. Alcoholic Beverages Comm. v. Circuit Court of Marion County (1943), 221 Ind. 572, 49 N.E.2d 538.
In the absence of statutory authority, courts do not have any jurisdiction to interfere by injunction with organization affairs of political parties. "The mere fact that the court had jurisdiction of actions at law as well as suits in equity is not cause for refusing a writ of prohibition to restrain it from acting outside and in excess of its equitable jurisdiction by issuing an injunction to control matters purely political." State ex rel. Coffin v. Marion Superior Court (1925), 196 Ind. 614, 625, 149 N.E. 174. The holding of this case was followed in State ex rel. Blaize v. Hoover (1936), 210 Ind. 215, 2 N.E.2d 391. Although equity has general power to appoint receivers, it does not have jurisdiction to appoint a receiver of the property of an individual to protect an unsecured creditor. State ex rel. v. Superior Court of Marion County (1924), 195 Ind. 174, 144 N.E. 747. This principle was recently affirmed in State ex rel. Busick v. Ewing, Judge (1951), 230 Ind. 188, 102 N.E.2d 370. When the legislature by statute places the exclusive right in the bank commission to apply for the appointment of a receiver for a bank, the trial court, on the complaint of a creditor, did not acquire jurisdiction to appoint a receiver. State ex rel. Meyer-Kiser Bank v. Superior Court of Marion County (1931), 202 Ind. 589, 177 N.E. 322.
Nor, in the absence of statute authorizing it, does the trial court in a drain proceedings have jurisdiction to order the state highway commission to build a bridge for the drain. State v. Roberts (1948), 226 Ind. 106, 76 N.E.2d 832. Nor does the trial court have jurisdiction to issue a restraining order beyond the issues made by the complaint. State ex rel. Surprise v. Porter Circuit Court (1948), 226 Ind. 375, *296 80 N.E.2d 107. Nor does the trial court have jurisdiction to try issues arising out of a contract when another court of concurrent jurisdiction had first acquired jurisdiction to litigate the rights under the same contract. State ex rel. Ferger v. Circuit Court (1949), 227 Ind. 212, 84 N.E.2d 585; State ex rel. Allison v. Brennan (1951), 229 Ind. 281, 97 N.E.2d 925. General jurisdiction to issue injunctions does not give a court jurisdiction to issue an injunction which involves rates when another court by statute has jurisdiction to review a pending matter concerning utility rates. State ex rel. Ind'p'l's. Ry. v. Superior Court (1947), 225 Ind. 301, 74 N.E.2d 912. See also State ex rel. Allison v. Marion Municipal Court (1944), 222 Ind. 602, 56 N.E.2d 493; State ex rel. Feeney v. Sup. Ct. of Marion County (1934), 206 Ind. 78, 188 N.E. 486; State ex rel. Kunkle v. LaPorte C. Ct. (1936), 209 Ind. 682, 694, 200 N.E. 614; Board of Comrs. of White County v. Gwin (1894), 136 Ind. 562, 36 N.E. 237, 22 L.R.A. 402; I High, Injunctions (4th Ed.), p. 59, § 43.[4] That part of a preemptory writ of mandamus which is beyond the power of the court to issue is in excess of its jurisdiction and void. Ex Parte Rowland (1882), 104 U.S. 604, 26 L.Ed. 861.
The distinction between judicial and legislative functions has been clearly stated by Mr. Justice Holmes in *297 Prentis v. Atlantic Coast Line Co. (1908), 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150, 158, 159, as follows: "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind...." In a review of a commission order fixing rates, Chief Justice Taft noted the limitation on the jurisdiction of courts in the following language: "Or has it [the court] the power, in this equitable proceeding, to review the exercise of discretion by the commission and itself raise or lower valuations, rates, or restrict or expend orders as to service? Has it the power to make the order the commission should have made? If it has, then the court is to exercise legislative power in that it will be laying down new rules, to change present conditions and to guide future action, and is not confined to definition and protection of existing rights." Keller v. Potomac Electric Power Co. (1923), 261 U.S. 428, 440, 43 S.Ct. 445, 67 L.Ed. 731, 735. See also Los Angeles G. & E. Corp. v. Railroad Com. (1933), 289 U.S. 287, 304, 305, 53 S.Ct. 637, 77 L.Ed. 1180, 1192; St. Joseph Stock Yards Co. v. U.S. (1936), 298 U.S. 38, 51, 56 S.Ct. 720, 80 L.Ed. 1033, 1041.
In St. Louis & S.F.R. Co. v. Gill (1895), 156 U.S. 649, 663, 15 S.Ct. 484, 39 L.Ed. 567, 572, the Supreme Court quoted with approval the opinion in Reagan v. Farmers Loan & Trust Co. (1894), 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014, as follows: "The opinion of this court on appeal was that while it was within *298 the power of a court of equity in such case to decree that the rates so established by the commission were unreasonable and unjust, and to restrain their enforcement, it was not within its power to establish rates itself, or to restrain the commission from again establishing rates." (Italics added.)[5] The courts have no power to establish rates under any scheme to avoid the constitutional prohibition. "Rate making is no function of the courts, and should not be attempted, either directly or indirectly." (Italics added.) Newton v. New York Consolidated Gas Co. (1922), 258 U.S. 165, 177, 42 S.Ct. 264, 66 L.Ed. 538, 548.
In Federal Power Com. v. Pacific Power & L. Co. (1939), 307 U.S. 156, 160, 59 S.Ct. 766, 768, 83 L.Ed. 1180, 1183, 1184, the Supreme Court, speaking by Mr. Justice Frankfurter, again recognized that courts do not have authority to order an administrative board to make a particular order. The court would not *299 presume that the board would not make its proper order in conformity with the opinion of the court of review, and said, "In none of the situations in which an action of the Interstate Commerce Commission or of a similar Federal regulatory body comes for scrutiny before a Federal court can judicial action supplant the discretionary authority of a commission. A Federal court cannot fix rates nor make divisions of joint rates nor relieve from the long-short haul clause nor formulate car practices. So here it is immaterial that the court itself cannot approve or disapprove the transfer.... For purposes of judicial finality there is no more reason for assuming that a Commission will disregard the direction of a reviewing court than that a lower court will do so." The reasoning of this case was approved by us in Heflin v. Red Front Cash & Carry Stores, Inc. (1947), 225 Ind. 517, 525, 75 N.E.2d 662, wherein we held we were without jurisdiction to order an administrative board to enter an order for a party before it, and that the proper mandate was to remand the proceedings "to that board with directions for that body to vacate and set aside its award and to proceed further in a manner not inconsistent with the views herein expressed."[6] In In re Northwestern Indiana Tel. Co. (1930), 201 Ind. 667, 685, 171 N.E. 65, this court reversed a judgment of a trial court which ordered the Public Service Commission to approve and authorize a particular order by the commission, and held that any legislative attempt to vest the courts with power "to control administrative or legislative discretion, *300 or to clothe the courts with legislative powers over the Commission," is unconstitutional and void. See also N.Y.C. & St. L.R.R. Co. v. Singleton (1934), 207 Ind. 449, 190 N.E. 761.
In State ex rel. Evansville City Coach Lines, Inc. v. Rawlings (1951), 229 Ind. 552, 565, 99 N.E.2d 597, 603, the majority opinion correctly said, "The power to fix rates for public utilities is a legislative function and this court has consistently held that courts cannot invade the province of the legislature. Langenberg v. Decker (1892), 131 Ind. 471, 31 N.E. 190, 16 L.R.A. 108; Hanly v. Sims (1911), 175 Ind. 345, 93 N.E. 228, 94 N.E. 401; State ex rel. Black v. Burch (1948), 226 Ind. 445, 80 N.E.2d 294, 81 N.E.2d 850; Schisler v. Merchants Trust Co. (1950), 228 Ind. 594, 94 N.E.2d 665, supra."
Unfortunately, in recent years the rule has become more noted for its violation than compliance. The error of the majority opinion is based upon the specious reasoning of the opinions in Public Serv. Comm. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 72 N.E.2d 434, and Public Serv. Comm. v. Indianapolis Rys. (1948), 225 Ind. 656, 76 N.E.2d 841, which paid lip service to the rule that the fixing of rates is not a judicial function, but legislative which could only be done by the Commission, but then proceeded to fix a rate by approving a rate schedule filed by the utility with the Commission.
It is apparent that the trial court did fix a schedule of rates for Bell, for the order in part states as follows:
"Ordered that the plaintiff [Bell] may make said schedule of local exchange rates effective as of plaintiff's regular billing dates as they shall occur next after said filing; and it is further
"Ordered that the plaintiff may charge and collect the rates included in said schedule from and *301 after the filing and effective date aforesaid and until the further order of the court herein; and it is further
"Ordered that the defendants be and they are hereby enjoined and restrained from interfering or attempting to interfere with the charging and collecting by plaintiff of the rates for its services included in said schedules until the further order of the court herein; ...."
If the court did not fix the rates in these cases, how were they fixed? Certainly, not by the Commission, for it was enjoined from interfering with the rates. Did the utility fix the rates? If so, it was done in flagrant violation of the statutes of Indiana creating the Public Service Commission and defining its powers, rights and duties. How can a court enjoin interference with rates filed by a utility and not thereby approve the rates?[7]
This court in these cases erred in its conception of the constitutional limitations on judicial power, and overlooked its inherent power to require an administrative board, by the coercive remedy provided by civil contempt proceedings, if necessary, to compel the board to take further proceedings not inconsistent with its opinion or finding and judgment. Nor would a limitation of time upon the Commission in which to act in compliance with such a mandate be unreasonable in view of the extended hearings already had by which the Commission should have been duly advised. It is wholly unnecessary to make a scrap of paper out of § 1 of Article 3 and § 1 of Article 4 of the Constitution of Indiana in order to protect Bell from being compelled *302 to charge rates which were confiscatory if they be finally so adjudged. Such practices have never been followed by the Supreme Court of the United States and should not be followed by this court. Moreover, if this court is going to continue to hold that courts can fix utility rates, the trial courts having jurisdiction to review the actions of the Commission will have little time for anything else, in view of the complicated questions of value and rates involved and the voluminous evidence proper in such hearings. Why have any Commission at all if this court is going to usurp its powers?

TEMPORARY INJUNCTION VOID FOR WANT OF ANY FINDING
In compliance with § 20 of Article 7 of the Constitution, the Code abolishes the distinction "in pleading and practice between actions at law and suits in equity...." Section 2-101, Burns' 1946 Replacement. Section 7 of Ch. 169 of the 1929 Acts (§ 54-435, Burns' 1951 Replacement),[8] provides that "No injunction shall issue in any such action suspending or staying any order of the commission except after notice to the commission and hearing." (Italics added.) "`The word "hearing" has an established meaning, as applicable to equity cases. It means the same thing in those cases that the word "trial" does in cases at law.'" Burson v. National Park Bank of New York (1872), 40 Ind. 173, 179.[9] "Upon trials of questions of fact *303 by the court, it shall not be necessary for the court to state its finding, except generally for the plaintiff or defendant," unless one of the parties requests special findings and conclusions of law. Section 2-2102, Burns' 1946 Replacement. "The term `decision' in the statute necessarily embraces a general finding when the case is tried by the court. It has been held by this court that the term decision, as used in the statute, also includes a special finding, and that the words decision and finding are synonymous." Wolverton v. Wolverton (1904), 163 Ind. 26, 31, 71 N.E. 123. At common law, a judgment in a jury case without the verdict of the jury is void. 1 Freeman, Judgments (5th Ed.), § 360, p. 752. "And where there are issues of fact in a case, neither party can have a judgment in his favor unless he has a finding or verdict to support it." Nicholson et al. v. Caress (1881), 76 Ind. 24, 26.[10]
This state adheres to the common law rule that a judgment is not a finding. Haxton v. McClaren (1892), 132 Ind. 235, 248, 31 N.E. 48; 2 Elliott, General Practice, § 1021; Wall v. City of Muncie (1929), 201 Ind. 170, 166 N.E. 659. It should be self-evident the same words at the same time cannot constitute both a finding and a judgment. The fact that a temporary injunction for purposes of appeal is called an interlocutory order does not make it any less a judgment. It is not a final *304 judgment, but it is still a judgment. 49 C.J.S. 35, § 11; 30 Am. Jur. 839, § 41. The temporary injunction did adjudicate rights for the time being pending the main action. If it did not affect rights, there would be no purpose in permitting an appeal therefrom. The common law referred to such adjudications as "interlocutory judgments,"[11] and when the Code refers to such a judgment as an interlocutory order, the result has been loose statements and confused thinking in our books. A temporary injunction is not issued on the pleadings, but on evidence. It is not an ex parte matter, but is the result of an adversary proceeding. How can the trial court decide which party should prevail without making a finding?
It certainly has not been the practice in this state to enter a temporary injunction after hearing without a finding to support it. Wise v. Curdes (1942), 219 Ind. 606, 617, 40 N.E.2d 122; Indianapolis Dairymen's Co-Op. v. Bottema (1948), 226 Ind. 260, 79 N.E.2d 409; Pub. Ser. Com. v. Ind'p'ls. Railways (1947), 225 Ind. 30, 72 N.E.2d 434, supra. For a finding denying a temporary injunction see Koss v. Continental Oil Co. (1944), 222 Ind. 224, 52 N.E.2d 614. The opinion in the Indianapolis Railways case, supra, did not set out the finding on which the temporary injunction was based, since there was no issue on appeal involving it, but the finding does appear at page 53 of the original transcript on file with the clerk of this court. In this original action the attorney general did put in issue the lack of any finding to support the judgment.
*305 Nor did the circuit court in this matter "enter an opinion in writing." It is quite apparent from an examination of § 54-203, Burns' 1951 Replacement, that the legislature did make specific provision for a review of a rate order by the Commission, considering that a temporary injunction should have something to support it. The statutory requirement that "the circuit court or the general term shall in every case enter an opinion in writing" was first enacted in Ch. 190, § 4 of the 1933 Acts, and since it was enacted subsequent to Ch. 169 of the 1929 Acts (§ 54-429, et seq., Burns' 1951 Replacement) which covers the general subject matter of review of orders of the Commission, the subsequent act controls where it is in conflict with the prior act.
Without an opinion as required by the statute the Commission is without the benefit of the reasons why the trial court enters any judgment on review of the action of the Commission. Of course an opinion should set forth the facts as the court finds them, because the law does not operate in a vacuum but only operates on facts. Nor is this court in a proper position to review the action of any trial court without being advised by the opinion as to what the trial court really found.
It is quite apparent from reading the decisions of the United States Supreme Court involving reviews of orders by utility commissions that the trial court's statements of facts are indispensable to a proper administration of justice, whereby the rights of the ratepaying public as well as the utilities may be protected. This court under its rule making power should adopt a rule similar to Fed. Rules Civ. Proc. rule 52(a), 28 U.S.C.A.[12]
*306 Courts take judicial notice of general economic conditions, whether it be a period of inflation, State ex rel. v. Lewis (1918), 187 Ind. 564, 574, 120 N.E. 129, or a period of depression, Ohio Bell Teleph. Co. v. Public Utilities Com. (1937), 301 U.S. 292, 301, 57 S.Ct. 724, 81 L.Ed. 1093, 1100. It would be strange if Bell's valuations had not increased as well as its cost of doing business during this period of inflation. However, that is no reason for this court to nullify our Constitution, and to make administrative boards out of courts. The temporary writ should have been made permanent.
NOTE.  Reported in 103 N.E.2d 214.
NOTES
[1] Order of Commission in Cause No. 22632, dated May 31, 1951.
[1] "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Section 1, Article 3, Constitution of Indiana.

"The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: `Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except by bill." Section 1, Article 4, Constitution of Indiana.
[2] A court has no jurisdiction to render a punitive judgment on a charge of civil contempt. State ex rel McMinn v. Gentry (1951), 229 Ind. 615, 100 N.E.2d 676. See also Gompers v. Buck Stove & Range Co. (1911), 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A. (N.S.) 874.
[3] See Brown, Jurisdiction (2d Ed.) p. 388, § 110.
[4] "A writ of habeas corpus raises the question of the jurisdiction of the court over the persons and over the subject-matter, and also his jurisdiction to enter the particular judgment which he does enter." Kabanya v. Fogarty (1923), 193 Ind. 297, 301, 139 N.E. 449.

"Jurisdiction in a particular case is not only the power of the court to hear and determine but also the power to render the particular judgment entered, and every act of the court beyond its jurisdiction is void. (Ex parte Reed, 100 U.S. 13; Chicago Title and Trust Co. v. Brown, 183 Ill. 42.)" People v. Siman (1918), 284 Ill. 28, 32, 119 N.E. 940.
[5] "District courts may set aside a confiscatory rate prescribed by state authority because forbidden by the Fourteenth Amendment, but they are without authority to prescribe rates, both because that is a function reserved to the state, and because it is not one within the judicial power conferred upon them by the Constitution." Mr. Justice Stone in Central Ky. Nat. G. Co. v. Railroad Commission (1933), 290 U.S. 264, 271, 54 S.Ct. 154, 78 L.Ed. 307, 313.

"It is not our function, and was not the function of the court below, to do the work of the Commission by determining a rate base upon correct principles." Mr. Justice Roberts in West v. Chesapeake P. Teleph. Co. (1935), 295 U.S. 662, 679, 680, 55 S.Ct. 894, 79 L.Ed. 1640, 1651.
"However, that is the responsibility of the rate-making body, the Public Service Commission of Indiana, and not of this court. Neither this court nor the plaintiff can fix rates for a public utility. That responsibility rests solely with the rate-making body of the state if the utility does only intrastate business, as provided by the law of that state." Judge Baltzell in Bowles v. Indianapolis Railways, Inc. (1946), 64 F. Supp. 865, 871.
[6] In a rate case, the proper mandate, when a court of review reverses the lower court is to remand the cause "for further proceedings not inconsistent with this opinion." Ohio Bell Teleph. Co. v. Public Utilities Com. (1937), 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093, 1103.
[7] Nor could the temporary injunction be based on the power of equity to maintain the status quo pending the litigation. By its complaint Bell sought to avoid the status quo, and obtain new and higher rates, both pending the action and on final hearing.
[8] Chapter 169 of the 1929 Acts is a general act on court review of orders of the commission.
[9] Hearing in the "technical sense, is the trial of the case, including the introduction of evidence, the argument of the solicitors, and the decree of the chancellor." 30 C.J.S. 876, § 480.
[10] "There is no principle of law more firmly established than that the judgment must follow and conform to the verdict or findings." 11 Enc. of Pl. & Pr. p. 905. See also Dawson v. Shirk (1885), 102 Ind. 184, 1 N.E. 292; Reid v. State ex rel. Frybarger (1887), 58 Ind. 406; Nordyke, Marmon & Co. v. Dickson (1881), 76 Ind. 188; Mansfield v. Hinckle (1923), 81 Ind. App. 6, 139 N.E. 700; Moore v. Moore (1921), 74 Ind. App. 626, 129 N.E. 480; Stout v. Gaar, Scott & Co. (1901), 26 Ind. App. 582, 60 N.E. 357; Wysong v. Nealis (1895), 13 Ind. App. 165, 41 N.E. 388; Hooper v. Shorr (1939), 110 F.2d 446, 448; 49 C.J.S. 138, § 55.
[11] See 30 Am. Jur. 839, § 41.

"Judgments at law and decrees in equity are all `judgments' under the code." Hord v. Bradbury (1901), 156 Ind. 30, 33, 34, 59 N.E. 31.
[12] Rule 70 1/2 of the Federal Equity Rules adopted by the United States Supreme Court November 4, 1912, required that facts be stated specially by the trial court to be followed by the court's conclusions of law thereon. Hopkins Federal Equity Rules (8th Ed.) p. 301. The present Fed. Rules Civ. Proc. rule 52(a), 28 U.S.C.A., requires that "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review...." The rule further states that a memorandum opinion may serve the purpose of a special findings of fact if the findings of fact and conclusions of law appear therein.